

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN, TEXAS 78711**

JOHN L. HILL
ATTORNEY GENERAL

October 26, 1973

The Honorable Dorman H. Winfrey
Director and Librarian
Texas State Library
Box 2927 Capitol Station
Austin, Texas 78711

Opinion No. H- 140

Re: Authority of Library
and Historical Commis-
sion to contract to pro-
vide network communica-
tions services to library
systems and methods of
payment

Dear Mr. Winfrey:

You have requested an opinion regarding the communications network
in Texas presently linking libraries within a library system, linking systems,
and linking systems with the Commission. The network has been heretofore
operated with federal funds which will soon be cut off. You wish to know if
the Commission might legally finance the continued service by contractual
arrangements with the various systems. The "service" you contemplate, we
are informed, is the existing service of providing and financing a communi-
cations clearing-house system so that all participating libraries can be advised
of, and have access to, all materials available in other participating libraries.

Under § 3 of Article 5446a, the Texas State Library and Historical
Commission (hereafter "the Commission") is charged with a duty to establish
and develop a state library system, defined in § 2(5) as:

> "a network of library systems, <u>interrelated by contract,</u>
> for the purpose of organizing library resources and
> services for research, information, and recreation to
> improve statewide library service and to serve collect-
> ively the entire population of the state;" (emphasis added)

While the scheme of the Act places administrative responsibility in the
State Librarian (Cf. Article 5435, V. T. C. S.), it is the Commission to which
the delegated legislative authority in the field is given. Certain important

libraries are designated "major resource centers" for library "systems" which include other, smaller libraries. There are several "systems," each with a major resource center.

The Act specifically authorizes agreements between the governing bodies of governmental subdivisions within major resource system areas and between such governing bodies and those of member libraries of major resource systems. Section 8(a), (b), (c). Section 8(d) of the Act specifically authorizes contracts and agreements by the Commission and the governing body of a major resource center, on the one hand, with the governing bodies of other libraries for the provision of specialized resources and services to the major resource system. However, the Act does not expressly authorize the Commission to contract with the governing bodies of major resource center libraries to provide services to those libraries.

We must assume, however, that the Legislature intended the Commission to discharge its primary task: to establish and develop a network of library systems to serve collectively the entire population of the state. If contractual financial arrangements with major resource centers (major libraries) are necessary for that purpose, we think the power of the Commission to enter such contracts (which is not specifically prohibited) is necessarily implied. And if the Commission is authorized to enter a contract, it is authorized to exchange a consideration for the consideration it expects to receive. The consideration contemplated by your inquiry is the communication "service" to be supplied. We do not believe such contracts between the Commission and major resource centers, which further and develop the system, would be prohibited by the Act. [See the Interlocal Co-operation Act, Article 4413 (32c), V. T. C. S. ; the Interagency Cooperation Act, Article 4413 (32), V. T. C. S. ].

In the context of the situation presented here, we answer your first question in the affirmative. The Commission, in our opinion, may properly contract with major resource centers to provide the contemplated communications "service" in return for payment therefor.

Your second inquiry asks, "may the governing bodies [of major resource center libraries] reimburse the Commission for [such] services rendered [from] . . . State grant-in-aid funds, . . . granted to the governing bodies from Library and Historical Commission appropriation Item [14]? "

Items 8 and 14 of the appropriation to the Library and Historical Commission (H. B. 139, Act, 1973, 63rd Leg.) make the following appropriation for the fiscal years ending August 31, 1974 and August 31, 1975:

|  | "For the Years Ending | |
|---|---|---|
|  | August 31, 1974 | August 31, 1975 |
| "8. Consumable supplies and materials, current and recurring operating expense | 196,186 | 194,012 |
| " . . . . | | |
| "14. Library Systems Act funds for cash grants to cities and counties in Texas | 50,000 | 50,000" |

Section 14 of Article 5446a, V. T. C. S., authorizes State grants within the limitation of funds appropriated to establish various library programs listed therein.

Section 17 of Article 5446a provides:

"Sec. 17. (a) The Commission may use funds appropriated by the Texas Legislature for personnel and other administrative expenses necessary to carry out the provisions of the Act.

"(b) Libraries and library systems may use state grants for materials; for personnel, equipment, and administrative expenses; and for financing programs which enrich the services and materials offered a community by its public library.

"(c) State grants may not be used for site acquisition, construction, or for acquisition, maintenance, or rental of buildings, or for payment of past debts.

"(d) State aid to any free tax-supported public library is a supplement to and not a replacement of local support.

"(e) Exclusive of the expenditure of funds for administrative expenses as provided in Section 17(a) of this Act, all funds appropriated pursuant to Section 14 of this Act shall be apportioned among the major resource systems on the following basis:

"Twenty-five percent of such funds shall be apportioned equally to the major resource systems and the remaining seventy-five percent shall be apportioned to them on a per capita basis determined by the last decennial census." (emphasis added)

If the service contemplated is one which the libraries might legitimately purchase (using grant-in-aid funds) from a private supplier, there is no apparent reason that such funds could not be used to purchase the same service from the Commission (assuming the Commission has the authority to provide the service). Subsection (b) of Section 14 of Article 5446a permits libraries and library systems to spend such funds for programs which enrich the services and material offered a community by its public library, and it seems to us that the contemplated communication program would do so. We therefore answer "yes" to the second inquiry also.

Our foregoing answers have made your third question moot. In response to your fourth and last question, funds received by the Commission in such an exchange should be credited to the appropriation item from which the Commission financed the services. We assume that some, if not all, of the libraries composing the "systems" are units of a State Agency. Section 25 of Article V of the current General Appropriation Act provides (emphasis added):

"Sec. 25. REIMBURSEMENTS AND PAYMENTS. Any reimbursements received by an agency of the State for authorized services rendered to any other agency of the State Government, and any payments to an agency of the State Government made in settlement of a claim for damages, are hereby appropriated to the agency of the State receiving such reimbursements and payments for use during the fiscal year in which they are received.

"The reimbursements and payments received shall be credited by the Comptroller to the agency's current appropriation items or accounts from which the expenditures of like character were originally made. . . ."

We think the "service" contemplated might accurately be characterized as a necessary part of the establishment and development of a network of library systems to serve collectively the entire population of the state, that the cost of operating such a service could legitimately be considered a "current and recurring operating expense" within the meaning of item 8 of the appropriation bill, and that the expenditure of funds from that appropriation item for such a service is amply authorized by pre-existing law.

We therefore conclude that it is legally permissible for the Commission to initially use funds from item 8 to provide the service and to replenish the item 8 account with any funds paid by the libraries for the service.

## SUMMARY

The Library and Historical Commission may, under the Library Systems Act, enter into contracts with the governing bodies of major resource centers, if necessary to establish and develop a network of library systems to serve collectively the entire population of the state. If the operation and maintenance of a communications "service" by the Commission

meets such criteria, the contracting libraries may pay for the service with funds appropriated for grants-in-aid.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee